**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CORT ANCMAN and EILEEN ANCMAN,** | **)** | |
| | **)** | |
| **Plaintiffs,** | **)** | |
| | **)** | |
| **v.** | **)** | **No.05-455C** |
| | **)** | **(Judge Sweeney)** |
| **THE UNITED STATES,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS STATEMENT OF THE FACTS**

Defendant previously submitted a statement of the facts pursuant to 56.1(b)(1) of the Rules of the United States Court of Federal Claims prior to the 2006 amendments. Under the rules as amended the defendant is not required to respond in kind but have chosen to do so. Plaintiffs herein respectfully submit this response to the defendant's statements of the facts.

1. Eileen G. Ancman and Cort B. Ancman were active duty Majors in the United States Air Force until their retirement on August 31, 1998. Compl. ¶¶ 3, 6, 8.

***Plaintiffs agree.***

2. On December 2, 1997, Mr. and Mrs. Ancman applied for early retirement, effective August 31, 1998, pursuant to the Fiscal Year 1998 Drawdown Program for Temporary Early Retirement Authority ("TERA"). Compl. ¶ 6; 10 US.C. § 1293.

***Plaintiffs agree.***

3. Prior to submitting their TERA applications, Mr. and Mrs. Ancman were required to review and sign a Retirement Pre-Application Checklist ("pre-retirement checklist"). ARl at 26; AR2 at 23.[1]

***Plaintiffs agree.***

4. By signing the pre-retirement checklist, Mr. and Mrs. Ancman acknowledged that they had received a pay estimate and understood how their retired pay was computed. AR1 at 26, 29-30; AR2 at 23, 26-27.

***The Ancman's "understanding" included the following recognition: "I have been counseled on the effect my proposed retirement date will have …". In addition the checklist requires that the Ancmans were "given the opportunity to ask additional questions…". AR1 at 29-30; AR2 at 26-27.***

5. In accordance with the pre-retirement checklist, Mr. and Mrs. Ancman received an unofficial estimate of their retired pay. AR1 at l6, AR2 at 15.

***Plaintiffs agree.***

6. The unofficial estimates were generated by a computerized program using various inputs from a technician at the Pentagon Military Personnel Flight ("MPF"). Compl. ¶ 7; AR1 at 25; AR2 at 23.

***Plaintiffs agree.***

---

[1] "AR1" refers to the administrative record compiled by the Air Force Board For Correction Of Military Records ("AFBCMR" or the "board") for Eileen Ancman's application. "AR2" refers to the administrative record compiled by the board for Cort Ancman's application. The administrative record for each individual plaintiff consisting of each plaintiffs application before the AFBCMR has been filed under separate cover with the Court.

7. The Ancmans received written estimates of retired pay (before taxes) in the amounts of $1,535 for Eileen Ancman, and $1,483 for Cort Ancman. Compl. ¶ 7; ARl at 16; AR2 at 15.

***Plaintiffs agree.***

8. The written estimates that were provided with the pre-retirement checklist contained the following disclaimer statement at the top of the page:

> The dollar amount shown below is an ESTIMATE of your retirement pay. This ESTIMATE is based on the 1997 Pay Scale. This ESTIMATE is before taxes. Contact DFAS-CL for official retired pay estimates: DFAS-CL, Attn: ROB, P.O. Box 9919l, Cleveland, OH, 44199

AR1 at 16; AR2 at 15 (emphasis in original).

***Plaintiffs agree.***

9. Mr. and Mrs. Ancman's retirement applications were approved, and on August 31,1998, the Ancmans were retired. Compl. ¶ 8.

***Plaintiffs agree.***

10. At the time of her retirement, Eileen Ancman had served 15 years, 3 months, and l3 days of active service. ARl at 4.

***Plaintiffs agree***.

11. At the time of his retirement, Cort Ancman had served 15 years, 2 months, and 1l days of active service. AR2 at 4.

***Plaintiffs agree.***

l2. On September 25, 1998, the Defense Finance and Accounting Service-Cleveland Center ("DFAS") released a Summary of Retired Pay Account to Mr. and Mrs. Ancman calculating the actual retired pay (before taxes and deductions) that Mr. and Mrs. Ancman would receive. Compl. ¶ 9; AR1 at 18-19; AR2 at 17-18.

***Plaintiffs agree.***

13. The official DFAS statement showed that Eileen Ancman was to receive $1,413 in gross retired pay, and Cort Ancman was to receive $1,393 in gross retired pay. Id.

***Plaintiffs agree.***

l4. On October 7, 1998, Mr. and Mrs. Ancman sought correction of their military records through the AFBCMR, requesting that their retirement pay be increased to reflect the amounts set forth in the estimates they received in December 1997. Compl. ¶ 11; AR1 at 1l; AR2 at l0.

***Plaintiffs agree.***

15. To assist in its evaluation of Mr. and Mrs. Ancman's applications, the AFBCMR requested an advisory opinion from the Chief, Retirements Branch in the Personnel Program Management Directorate at the Air Force Personnel Center ("Lt. Col. Stevens"). AR1 at 5, 25-27; AR2 at 4, 22-24.

***Plaintiffs agree.***

16. Lt. Col. Stevens, in turn, sought guidance from the Superintendent, System Support Branch ("Senior Master Sergeant Essa") as the office of primary responsibility for the retirement pay calculator. AR1 at 24.

***Plaintiffs agree.***

17. Senior Master Sergeant Essa advised the board that the retirement pay calculator was intended to provide an estimate of the amount of retirement pay a retiree would receive. AR1 at 23.

***Plaintiffs agree that this was included in Senior Master Sergeant Essa's correspondence to Col. Stevens.***

18. Senior Master Sergeant Essa further advised that while "these figures are usually within a few dollars from the actual DFAS calculated pay," variations in pay "generally required close scrutiny and only DFAS Cleveland can provide an accurate estimated pay." Id.

***Plaintiffs agree that this was included in Senior Master Sergeant Essa's correspondence to Col. Stevens.***

19. Senior Master Sergeant Essa also highlighted the fact that "a disclaimer was put on the web notifying all users that the figures there represented an estimated retired pay only. For an official retired pay estimate, the users are advised to correspond directly with DFAS Cleveland." Id.

***Plaintiffs agree that this was included in Senior Master Sergeant Essa's correspondence to Col. Stevens.***

20. Based in part upon this guidance, Lt. Col. Stevens recommended that the Mr. and Mrs. Ancman's applications be denied because the Ancmans had failed to demonstrate an injustice had taken place. AR1 at 25-27; AR2 at 22-24.

***Plaintiffs agree the recommendation was made by Lt. Col. Stevens but not as to his conclusion.***

21. Lt. Col. Stevens's recommendation was based upon several factors. Id.

***Plaintiffs agree.***

22. Lt. Col. Stevens noted that the December 2, 1997 estimate obtained by Mr. and Mrs. Ancman clearly stated, "[t]he dollar amount shown below is an estimate of your retirement pay." AR1 at 26; AF2 at 23.

***Plaintiffs agree.***

23. Lt. Col. Stevens further explained that at the time Mr. and Mrs. Ancman received their estimates, they were directed to "[c]ontact DFAS-CL for official retired pay estimates." AR1 at 26; AR2 at 23.

***Plaintiffs agree that the pre-retirement checklist which they signed had this statement printed on it.***

24. Lt. Col. Stevens pointed out that despite being "offered an opportunity to obtain an official estimate from the agency that is the office of primary responsibility for retired military pay" and claiming that they were basing "life changing decisions" on the exact amount of their retirement pay, there is no evidence to indicate the plaintiffs ever contacted DFAS-CL for computation of their official retirement pay. AR1 at 26-27; AR2 at 23-24.

***INACCURATE.***

***Lt. Col. Stevens is incompletely quoted, and the plaintiffs do not agree as to the accuracy of his conclusion. Along with the stated quote he went on to say that "[they] declined to contact DFAS-CL for this very information", which is an inaccurate statement by Col. Stevens. The Ancman's sworn statements are that they did contact DFAS-CL and received the recording that we "are unable to handle your call in a timely manner now. Please try your call another time". AR1 at 27, 39; AR2 at 24, 36.***

25. The AFBCMR provided Mr. and Mrs. Ancman a copy of the October 22, 1998 and the November 25, 1998 advisory opinions and given an opportunity to respond. AR1 at 33; AR2 at 30.

***Plaintiffs agree.***

26. In their response to the AFBCMR's advisory opinions, Mr. and Mrs. Ancman stated that when they received their estimates, they did not understand that the exact amount of their retired pay could not be provided without a computation of their exact years of service in accordance with 10 U.S.C. 1405. ARl at 37-38; AR2 at 34-35.

***Plaintiffs agree.***

27. Mr. and Mrs. Ancman also stated that they understood this fact to be true at the time of their Pentagon meeting, but the Pentagon MPF assured them that "though the pay estimator was not exact, it was within $1 -$2 of what we would be getting in retired pay," and so they felt there was no need to contact DFAS. ARl at 38; AR2 at 35.

***Plaintiffs agree.***

28. Mr. and Mrs. Ancman further asserted that they retired because they could live with this estimate. AR1 at 38; at AR2 at 35.

***Plaintiffs agree.***

29. Mr. and Mrs. Ancman also stated they attempted to contact DFAS about 10 times, but only received a recording. AR1 at 39; AR2 at 36.

***Plaintiffs agree.***

30. Mr. and Mrs. Ancman claimed they were only able to get the information from DFAS when their Senator contacted DFAS through a special phone number. AR1 at 39; AR2 at 36.

***Plaintiffs agree.***

31. Mr. and Mrs. Ancman claimed they would "not have left the military early had we known what our actual retired pay would be." AR1 at 42; AR2 at 39.

***Plaintiffs agree.***

32. Mr. and Mrs. Ancman stated the difference in pay from what the Air Force estimated they would receive and what their actual retired pay amounted to made it very difficult for them and they are suffering a "grave injustice due to an Air Force mistake." AR1 at 42; AR2 at 39.

***Plaintiffs agree.***

33. Mr. and Mrs. Ancman's response to the advisory opinions specifically did not request that the board reinstate them into the Air Force, but "rather grant us the money we had counted on for a smooth, post Air Force retirement." ARl at 42; AR2 at 39.

***Plaintiffs agree.***

34. On June l7, 1999, the AFBCMR recommended that Mr. and Mrs. Ancman be granted partial relief. Compl. ¶ 12; AR1 at 8; AR2 at 7.

***Plaintiffs agree***.

35. The board found that Mr. and Mrs. Ancman were partially responsible for believing they would receive greater retirement pay, thus, the AFBCMR recommended partial relief by granting 75 percent of the difference in retired pay. AR1 at 7; AR2 at 7.

***Plaintiffs agree.***

36. In reaching its recommendation, the AFBCMR recognized that the estimated figures Mr. and Mrs. Ancman received from the Pentagon MPF were clearly identified as estimates. Id.

***Plaintiffs agree.***

37. The AFBCMR faulted Mr. and Mrs. Ancman for failing to obtain an accurate estimate from DFAS prior to accepting early retirement. Id.

***Plaintiffs agree.***

38. The AFBCMR recommended Mr. and Mrs. Ancman be granted equitable relief because the Ancman's were led to believe there would be a small difference between the estimates and their retired pay. Id.

***Plaintiffs agree.***

39. The AFBCMR's record of proceedings, including the board's recommendation, were forwarded to the Assistant Secretary of the Air Force (Manpower, Reserve Affairs, Installations and Environment) for review and final action. AR1 at 2, 9-10; AR2 at 2, 8-9.

***Plaintiffs agree.***

40. On November 30, 1999, the Assistant Secretary denied Mr. and Mrs. Ancman's application for relief. AR1 at 9-10; AR2 at 8-9.

***Plaintiffs agree.***

41. Although the Assistant Secretary noted that Mr. and Mrs. Ancman were provided inaccurate estimates by the Pentagon MPF, "nonetheless, the estimates were clearly identified as such and provided the address of the proper source to obtain official estimates." AR1 at 9-10; AR2 at 8-9.

***Plaintiffs agree that the Secretary made this statement.***

42. The Assistant Secretary further found that although "the applicants had almost nine months to confirm the accuracy of the Pentagon MPF estimates before retirement," there was no independent evidence that the plaintiffs took any action on their own part to do so. AR1 at 10; AR2 at 9.

***Plaintiffs agree that the Secretary made this statement, but do not agree as the conclusion it contains.***

43. The Assistant Secretary also noted that despite Mr. and Mrs. Ancman's allegation that the Pentagon MPF told the Ancmans that they did not need to contact DFAS because the retirement pay estimates they were given were within $1-$2 of what they would be receiving in retired pay, the Ancmans provided no evidentiary support for this allegation. AR1 at 10; AR2 at 9.

***Plaintiffs agree that the Secretary made this statement, but do not agree as to the conclusion reached or the standard on which the Secretaries conclusion was based. The Ancman's statement is the only conclusion supported by the record, given the pre-retirement checklist presumes "counseling" and the Air force has not produced any evidence to refute the account of the counseling given to the Ancmans. AR1 at 29; AR2 at 26***

44. The Assistant Secretary concluded that "absent corroborative evidence from the Pentagon MPF or an indication that the applicants were provided inaccurate estimates of their retired pay from DFAS, I find no compelling basis to provide them additional retirement benefits for periods of service in which they did not serve." AR1 at 10; AR2 at 9.

***Plaintiffs agree that the Secretary made this statement.***

45. The Assistant Secretary concluded her decision memorandum by stating:

> In my view, if the exact amount of retired pay were crucial to their decision to accept early retirement, the failure to seek official confirmation of the Pentagon estimates from DFAS before retirement, when clearly invited to do so, is inexcusable and militates against the granting of relief

AR1 at 10; AR2 at 9.

***Plaintiffs agree that the Secretary made this statement***.

46. On December 20, 1999, Mr. and Mrs. Ancman were notified that the Assistant Secretary had denied their applications because the evidence the Ancmans presented did not demonstrate the existence of probable material error or injustice. Compl. ¶ 13; AR1 at 2; AR2 at 2.

***Plaintiffs agree that the Secretary denied the claim but do not agree as to the conclusion contained.***

47. On April 16, 2004, Mr. and Mrs. Ancman filed suit in the United States District Court of Nevada.

***Plaintiffs agree.***

48. On April 8, 2005, the action was transferred to the United States Court of Federal Claims.

***Plaintiffs agree.***

49. On 27 April 2005, the plaintiffs filed suit in this Court challenging the Assistant Secretary's decision to deny their applications for relief before the AFBCMR.

***Plaintiffs agree.***

**Additional facts substantiated by the record submitted by the plaintiffs ("PF").**

PF1. Assistant Secretary of the Air Force (Manpower, Reserve Affairs, Installations and Environment) characterized the estimate of the Ancman's retirement as "grossly inaccurate". AR1 at 9; AR2 at 8.

PF2. Chief, Retirements Branch in the Personnel Program Management Directorate at the Air Force Personnel Center ("Lt. Col. Stevens"), stated in his advisory opinion to the AFBCMR that "[f]or reasons we cannot explain…" the MPF used the Ancman's pay date in place of the unavailable 10 USC 1405 date when preparing the Ancman's pre-retirement amount. AR1 at 26; AR2 at 23.

PF3. The Pre-retirement checklist signed by the Ancman's in advance of applying for early retirement included the following statements clearly indicating that the Air Force anticipated information on which they should reasonably rely to be disseminated to the Ancman's in addition to the printed form that they signed.

6. UNDERSTANDING OF RETIRED PAY COMPUTATION (AFI 36-3203, Chapter 7): I have been counseled on the effect my proposed retirement date will have on my retired pay and have received a retired pay estimate.

10. ACKNOWLEDGEMENT OF UNDERSTANDING: ….I have been given the opportunity to ask additional questions…" AR1 at 29-30; AR2 at 26-27. (Emphasis original)

PF4. The only evidence of any information received by the Ancman's under ¶¶ 6 and 10 of the pre-retirement checklist is the Ancman's own statement that they were told that estimate was within $1 to $2 of the estimate that DFAS-CL, that DFAS-CL. Compl.¶ 7, AR1 at 25; AR2 at 22.

PF5. The TERA program under which the Ancman's retired was very popular, offered for a limited time, with demand exceeding availability on a first come first served basis. AR1 at 39; AR2 at 36.

PF6. The Ancman's were required to sign the pre-retirement checklist, receive the pay estimate, and sign the acknowledgment at the same time. AR1 at 39,67; AR2 at 36, 64.

PF7. At the time the Ancman's accepted early retirement based on the MPF generated estimate they were told that their retirement was irrevocable. AR1 at 71; AR2 at 70.

PF8. The Ancman's were given a week to decide whether or not to take early retirement based on the pay estimate given to them. AR1 at 71; AR2 at 70.

PF9. During this week they tried to contact DFAS-CL and consistently received the message: "… [we] are unable to handle your call in a timely manner now. Please try your call another time". AR1 at 71; AR2 at 36, 70.

PF10. DFAS-CL had known issues in regards to how difficult they were to contact, even by Air Force finance personnel. AR1 at 39; AR2 at 36.

PF11. Because the Ancman's had not reached 18 years of service, DFAS-CL did not have their 10 U.S.C. 1405 date at the time of the Ancman's application for retirement. AR1 at 5, 26; AR2 at 5, 23.

PF12. The Ancman's were told that DFAS-CL did not have their 10 U.S.C. 1405 date as part of the information they were given in addition to that on the pre-retirement checklist. AR1 at 38; AR2 at 35.

PF13. Cort Ancmans's 1405 date was not computed until "many additional months" after approval of his retirement. AR1 at 68; AR2 at 65, 66.

Respectfully submitted,

s/Margaret K. Krasik, Esq.

Attorney for Plaintffs

600 Forbes Avenue
Pittsburgh, Pa. 15282
Telephone: 412-396-6302
Fax: 412-396-4014

February 5, 2007

.