**No. 05-455C**
**(JUDGE SWEENEY)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**CORT ANCMAN AND EILEEN ANCMAN,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S SECOND REPLY TO PLAINTIFFS' SECOND RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND IN THE ALTERNATIVE, MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD, WITH DEFENDANT'S SUPPLEMENTAL APPENDIX

---


**PETER D. KEISLER**
**Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Director**

**BRYANT G. SNEE**
**Deputy Director**

**DOUGLAS K. MICKLE**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification Unit, 8th Floor**
**1100 L Street, N.W.**
**Washington DC 20530**
**Tele: (202) 307-0383**
**Fax: (202) 353-7988**

**Of Counsel:**
**MAJOR CAREY A. MERRILL**
**Air Force Legal Operations Agency**
**1501 Wilson Blvd., 7th Floor**
**Arlington, VA 22209-2403**


**March 12, 2007**

## TABLE OF CONTENTS

INTRODUCTION ..................................................... 1

ARGUMENT ..................................................... 4

I. The Court Must Dismiss The Ancmans' Tort Claims for Lack of Jurisdiction ..................................................... 4

II. The Ancmans' Breach Of Contract Claim Must Be Dismissed ..................................................... 5

III. The Ancmans Have Not Remedied Their Failure To Plead The Requisite Money - Mandating Source For This Court To Possess Jurisdiction Under The Tucker Act ..................................................... 5

A. The Ancmans Attempt To Amend Their Claim Through Their Reply Brief Should Be Rejected ..................................................... 6

B. Even Assuming The Ancmans Properly Amended Their Complaint, The Statutes And Regulations They Now Cite For Support Are Not Money-Mandating ..................................................... 7

C. 10 U.S.C. §1552 Is Not A Money-Mandating Source Of Law For This Court's Jurisdiction Pursuant To The Tucker Act ..................................................... 11

IV. The Ancmans' Retirement Pay Has Been Properly Calculated Pursuant To Applicable Statutes And Regulations ..................................................... 12

A. There Is No Statute Or Regulation That Mandates Retirement Pay Be Based Upon Fictionalized Service ..................................................... 12

V. The Issue Of The Voluntariness Of Mr. And Mrs. Ancman's Retirements Is Not Properly Before This Court ..................................................... 15

**TABLE OF CONTENTS (CONT'D)**

VI. The Ancmans Cannot Establish A Right To Increased Retirement Pay By Asserting Their Actions Were Involuntary ........ 16

VII. This Court Should Affirm The Secretary's Decision As It Was In Accordance With The Law, Supported By Substantial Evidence, And Neither Arbitrary Nor Capricious ........ 19

VIII. Although A Military Corrections Board Has Equitable Powers, This Court Does Not, And Cannot Substitute Its Judgment For That Of The Secretary ........ 23

CONCLUSION ........ 25

## TABLE OF AUTHORITIES

**CASE** **PAGE(S)**

Anderson v. United States,
59 Fed. Cl. 451 (2004) ........ 23

Arens v. United States,
24 Cl. Ct. 407(1991), vacated on other grounds,
969 F.2d 1034 (Fed. Cir. 1992) ........ 19

Bannum, Inc. v. United States,
404 F.3d 1346 (Fed. Cir. 2005) ........ 1

Bell v. United States,
366 U.S. 393 (1961) ........ 5

Brewer v. Purvis,
816 F. Supp. 1560 (M.D. Ga. 1993), aff'd,
44 F.3d 1008 (11th Cir. 1995) ........ 4

Brown v. United States,
30 Fed. Cl. 227 (1993), ........ 20

Car Carriers, Inc. v. Ford Motor Co.,
745 F.2d 1101 (7th Cir. 1984) ........ 6, 16

Chappell v. Wallace,
462 U.S. 296 (1983) ........ 20

Chisolm v. United States,
65 Fed. Cl. 497 (2005) ........ 20

Consolidated Edison Co. v. Labor Board,
305 U.S. 197 (1938) ........ 20

Crest A Apartments, Ltd. II v. United States,
52 Fed. Cl. 607 (2002) ........ 6

Crocker v. United States,
125 F.3d 1475 (Fed. Cir. 1997) ........ 8

**TABLE OF AUTHORITIES (CONT'D)**


**CASE** **PAGE(S)**

Cunkelman v. United States,
229 Ct. Cl. 857 (1982) .......... 15

Dehne v. United States,
970 F.2d 890 (Fed. Cir. 1992) .......... 14

Driscoll v. United States,
67 Fed. Cl. 22 (2005) .......... 12

Feres v. United States,
340 U.S. 135 (1950) .......... 4

Finch v. Hughes Aircraft Corp.,
926 F.2d 1574 (Fed. Cir. 1991) .......... 4

Fry v. United States,
72 Fed. Cl. 500 .......... 5, 6, 7

Gilligan v. Morgan,
413 U.S. 1 (1973) .......... 20

Greek v. United States,
44 Fed. Cl. 43 (1999) .......... 8

Harris v. United States,
14 Cl. Ct. 84, 89 (1987), aff'd,
861 F.2d 729 (Fed. Cir. 1988) .......... 20

Heaphy v. United States,
23 Cl. Ct. 697 (1991) .......... 17

Heisig v. United States,
719 F.2d 1153 (Fed. Cir. 1983) .......... 20

Hughes v. Rowe,
449 U.S. 5 (1980) .......... 7

Kinnucan v. United States,
25 Cl. Ct. 355, 360-361 (1992) .......... 14, 23

## TABLE OF AUTHORITIES (CONT'D)


Lawmaster v. Ward,
125 F.3d 1341 (10th Cir. 1997) ..... 6

Lewis v. United States,
458 F.3d 1372 (Fed. Cir. 2006) ..... 5, 12

Loeh v. United States,
53 Fed. Cl. 2 (2002) ..... 8

Longhofer v. United States,
29 Fed. Cl. 595 (1993), ..... 17, 18

Martinez v. United States,
333 F.3d 1295 (Fed. Cir. 2003) ..... 5, 11, 12

Massa v. Department of Defense,
815 F.2d 69 (Fed. Cir. 1987) ..... 20

Metz v. United States,
466 F.3d 991 (Fed. Cir. 2006) ..... 15, 16

Michels v. United States,
72 Fed. Cl. 426 (2006) ..... 13

Murakami v. United States,
398 F.3d 1342 (Fed. Cir. 2005) ..... 15

Murphy v. United States,
69 Fed. Cl. 593 (2006) ..... 18

Nat'l Corn Growers Ass'n v. Baker,
840 F.2d 1547 (Fed. Cir. 1988) ..... 8

Novosteel SA v. United States,
284 F.3d 1261 (Fed. Cir. 2002) ..... 4

OPM v. Richmond,
496 U.S. 414 (1990) ..... 14, 23

Orloff v. Willoughby,
345 U.S. 83 (1953) ..... 20

**TABLE OF AUTHORITIES(CONT'D)**

**CASE** **PAGE(S)**

Perez v. United States,
156 F.3d 1366 (1998) ........ 23

Ruderer v. United States,
412 F.2d 1285, 188 Ct. Cl. 456 (1969) ........ 7

Sammt v. United States,
780 F.2d 31 (Fed. Cir. 1985) ........ 16

Sanders v. United States,
219 Ct. Cl. 285, 594 F.2d 804 (1979) ........ 20

Scharf v. Department of the Air Force,
710 F.2d 1572 (Fed. Cir. 1983) ........ 17

Sinclair v. United States,
66 Fed. Cl. 487 (2005) ........ 12

Southern Nevada Shell Dealers Ass'n v. Shell Oil,
725 F. Supp. 1104 (D. Nev. 1989) ........ 4

Southwestern Bell Tel. Co. v. Pub. Util. Comm'n,
208 F.3d 475 (5th Cir. 2000) ........ 15

Strickland v. United States,
423 F.3d 1335 (Fed. Cir. 2005) ........ 19

Tippet v. United States,
185 F.3d 1250 (Fed. Cir. 1999) ........ 16

United States v. L.A. Tucker Truck Lines, Inc.,
344 U.S. 33 (1952) ........ 15

Wronke v. Marsh,
787 F.2d 1569 (Fed. Cir. 1986) ........ 19

## STATUTES AND REGULATIONS

10 U.S.C. § 1293 .......... 13

10 U.S. C. §§ 1401-1414 .......... 2, 6

10 U.S.C. § 1405 .......... 9, 14

10 U.S.C. § 1552 .......... passim

10 U.S.C. § 8911 .......... 2, 6, 7, 13, 14

10 U.S.C. § 8926 .......... passim

10 U.S.C. § 8929 .......... 13

10 U.S.C. § 8991 .......... 13

28 U.S.C. § 1491 .......... 4, 5

28 U.S.C. § 1492 .......... 23

28 U.S.C. § 2401 .......... 4

28. U.S.C. § 2509 .......... 23

37 U.S.C. § 204 .......... 5, 12, 16

# INDEX TO DEFENDANT'S SUPPLEMENTAL APPENDIX

Extract, Air Force Instruction 36-3203, Personnel: Service Retirements,
10 August 1994 .......... 1

Military Retirement Actions Form .......... 55

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CORT ANCMAN and EILEEN ANCMAN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **No. 05-455C** |
| **THE UNITED STATES,** | ) | **(Judge Sweeney)** |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S SECOND REPLY TO PLAINTIFFS' SECOND RESPONSE[1] TO DEFENDANT'S MOTION TO DISMISS AND IN THE ALTERNATIVE, MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD, WITH DEFENDANT'S SUPPLEMENTAL APPENDIX**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), the United States ("Defendant") hereby submits the following reply memorandum in further support of its motion to dismiss Mr. and Mrs. Ancman's complaint, or in the alternative, to issue judgment upon the administrative record in favor of the United States pursuant to RCFC 52.1.[2]

**INTRODUCTION**

The United States has demonstrated throughout this matter that Mr. and Mrs. Ancman's complaint should be dismissed for several reasons. We have shown that, as an initial matter, this Court lacks jurisdiction to entertain Mr. and Mrs. Ancman's claims for "compensatory damages

---

[1] Mr. and Mrs. Ancman's first response, entitled "Plaintiffs' Motion To Transfer Case," was filed on March 29, 2006. We responded to that motion on April 18, 2006. The Ancmans most recent submission, entitled "Plaintiffs' Response In Opposition To Defendant's Motion To Dismiss, And Plaintiffs' Cross-Motion For Judgment On The Administrative Record," was filed on February 5, 2007 and will be referred to in this reply as "plaintiffs' response" or "Pl. 2nd Resp."

[2] The RCFC were amended June 20, 2006, to include RCFC 52.1(b). That rule abrogated RCFC 56.1, which we cited in our November 7, 2005 brief. RCFC 52.1 incorporates the reasoning of Bannum, Inc. v. United States, 404 F.3d 1346 (Fed. Cir. 2005). RCFC 52.1, Rules Committee Note (June 20, 2006).

for pecuniary losses, including pain and suffering, emotional distress and mental anguish" because those claims sound in tort, and that it is well-settled that the Federal district courts have exclusive jurisdiction to entertain tort claims. The United States also sought dismissal of the Ancmans' complaint because they failed to state a claim for which relief could be granted. We showed that, based upon their military service, the Ancmans could not point to any statute or regulation that mandates payment of the money they now seek. We explained that the Ancmans would only be entitled to relief if the Court fabricated their military service records to create fictional service for each of them. The United States further demonstrated that the Ancman's claim seeking breach of contract damages also fails because it is well-settled that military pay is a function of statute and regulation, not contract. In the alternative, we requested the Court to enter judgment in its favor upon the administrative record because the decision of the Assistant Secretary of the Air Force (Manpower, Reserve Affairs, Installations and Environment) (the "Assistant Secretary"), was in accordance with the law and was not arbitrary or capricious. In doing so, we noted that it is inconceivable that the Assistant Secretary's decision could be considered contrary to law when the Ancmans have never disputed that the retirement pay they are presently receiving is properly calculated based upon their service and the formula set forth in the statute and regulations.

In their response, the Ancmans claim that the Tucker Act applies to their complaint because, they urge, that they have sufficiently alleged and pleaded a comprehensive statutory and regulatory military retirement pay scheme that mandates the compensation they seek, specifically referencing in their response brief 10 U.S.C. §§ 8911, 8926 (retirement for length of service), 10 U.S. C. §§ 1401-1414 (computation of retirement pay) and Public Law 102-484 § 4403 (Temporary Early Retirement Authority) (Pl. 2nd Resp. at 11-13).

Mr. and Mrs. Ancman further asserted that 10 U.S.C. §1552 is a money-mandating statute, and that the Court possesses jurisdiction to entertain the Ancmans' complaint because their retirement was not voluntary. Furthermore, the Ancmans requested judgment upon the administrative record because they allege that the Assistant Secretary abused her discretion and acted arbitrarily and capriciously when she did not adopt the decision of the Air Force Board for Correction of Military Records ("AFBCMR" or the "board"). In making this claim, the Ancman's argue that the Assistant Secretary decision was unsupported by substantial evidence. Finally, the Ancmans argue that if the Secretary had held in their favor, the monetary damages that they would have received would not have violated principals of fiscal law.

As we explain below, the Ancman's response fails for many reasons. Initially, it appears that the Ancmans have conceded two issues as they failed to address the United States' arguments regarding dismissal of the Ancmans' claims that are based upon tort and contract law. Additionally, the Court should disregard any argument made by the Ancmans in their response regarding the issue of the voluntariness of their retirement because that issue was not presented to the AFBCMR nor plead in the Ancmans' complaint. Furthermore, Mr. and Mrs. Ancmans' response to the other substantive arguments the United States raised in its papers demonstrates that the Ancmans still have not stated a claim for relief. Finally, the record shows that the Assistant Secretary's decision was in accordance with the law and that Mr. and Mrs. Ancmans' retirement pay is exactly what the statute and regulations mandate for officers with the amount of service time the Ancmans had in the Air Force. At bottom, the Ancmans argument here is that the AFBCMR's decision to fabricate service records upon their behalf is not contrary to law and regulation, while the decision of the Assistant Secretary, which followed the law, is. Accordingly, this Court should grant defendant's motion to dismiss because the Ancmans have

failed to demonstrate otherwise, or in the alternative, affirm the decision of the Assistant Secretary based upon the administrative record.[3]

## ARGUMENT

### I. The Court Must Dismiss The Ancmans' Tort Claims for Lack of Jurisdiction

As expressly stated in our initial brief, this Court does not possess jurisdiction to entertain the Ancmans' claims arising in tort. 28 U.S.C. §2401(b); 28 U.S.C. § 1491(a) ("[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim . . . for liquidated or unliquidated damages in cases **not sounding in tort**." (emphasis added)). Moreover, we explained that the Ancmans' status as active duty Air Force officers when the alleged torts occurred, would bar the Ancmans' from bringing this matter in any court. Feres v. United States, 340 U.S. 135, 146 (1950). Although it appears our arguments upon this issue are unopposed,[4] the Court, we respectfully suggest, is obligated to evaluate the legal basis for the

---

[3] In support of our second reply brief, the United States relies upon Mr. and Mrs. Ancman's complaint ("Compl."), the AFBCMR's administrative records in Mr. Ancman's and Mrs. Ancman's cases which were previously filed in this matter (respectively "AR2" and "AR1") , the accompanying supplemental appendix to this brief ("DSA"), and the appendix accompanying the plaintiffs' response ("PA").

[4] Mr. and Mrs. Ancmans' response failed to respond to this argument. As such, we contend that the Ancmans have conceded the argument and this aspect of their complaint should be dismissed. Novosteel SA v. United States, 284 F.3d 1261, 1273-74 (Fed. Cir. 2002) (holding that appellant had waived argument by failing to present it in the principal summary judgment brief filed with the trial court, and observing that "[r]aising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief–they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration"); see Brewer v. Purvis, 816 F. Supp. 1560, 1579 (M.D. Ga. 1993) ("Summary judgment is appropriate since Plaintiff failed to respond to [defendant's] argument on this issue.") (citation omitted), aff'd, 44 F.3d 1008 (11th Cir. 1995); Southern Nevada Shell Dealers Ass'n v. Shell Oil, 725 F. Supp. 1104, 1109 (D. Nev. 1989) ("The plaintiffs, by failing to respond to [defendant's] argument in their opposition paper, have implicitly conceded that . . . [defendant's argument] . . precludes liability."); cf. Finch v. Hughes Aircraft Corp., 926 F.2d 1574, 1576-77 (Fed. Cir. 1991) (holding that plaintiff could not raise argument on appeal that

claims the Ancmans asserted. In this case, the law is clear and this Court must dismiss those claims arising in tort. Fry v. United States, 72 Fed. Cl. 500, 505; RCFC 12(h)(3).

## II. The Ancmans' Breach Of Contract Claim Must Be Dismissed

The Ancmans' response brief also failed to respond to our argument that their claim for breach of contract also fails. Thus, for the reasons stated above, the Ancmans have effectively conceded, as they should given the status of the law, this issue too.

As we explained in our opening brief, contract law does not apply to an analysis of military pay issues, as "a soldier's entitlement to pay is dependent upon statutory right." Bell v. United States, 366 U.S. 393, 401 (1961). The law is clear upon this issue, and this Court should dismiss the Ancmans' second cause of action, identified as "Breach of Contract," in their complaint.

## III. The Ancmans Have Not Remedied Their Failure To Plead The Requisite Money - Mandating Source For This Court To Possess Jurisdiction Under The Tucker Act

"The Tucker Act, 28 U.S.C. § 1491, authorizes actions for monetary relief against the United States to be brought in the Court of Federal Claims, but does not itself provide a substantive cause of action absent a money-mandating statute." Lewis v. United States, 458 F.3d 1372, 1376 (Fed. Cir. 2006), citing Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc). The Ancmans' complaint asserted that the Court possessed jurisdiction pursuant to the Tucker Act, through the Military Pay Act (37 U.S.C. § 204), and 10 U.S.C. §1552. In our motion to dismiss, we refuted that those statutes were money mandating. In their response, the Ancmans appear to have conceded that 37 U.S.C. § 204 is not pay mandating for their claim, but continue to argue that 10 U.S.C. § 1552 is money-mandating. Additionally, the

---

trial court erred in dismissing its complaint because it did not respond to the motion to dismiss).

Ancmans, for the first time, appear to assert that 10 U.S.C. §§ 1401-1414, 8911, 8926, and Public Law 102-484 §4403, 106 Stat 2315, 2704 (1992) also mandate compensation and, thus, provide the jurisdictional underpinnings for their claim. Putting aside for a moment that the Ancmans are impermissibly using their reply brief in an attempt to amend their complaint, these statutes and regulations do not mandate the payment of money. At best, they merely set forth ministerial actions for calculating retired pay. They do not mandate pay.

### A. The Ancmans Attempt To Amend Their Claim Through Their Reply Brief Should Be Rejected

Mr. and Mrs. Ancman have not sought leave of the Court to amend their complaint in accordance with RCFC 15, and therefore they still have not properly established this Court's jurisdiction by demonstrating that there is a money-mandating statute that supports their claims. "In order to pursue a substantive right, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages for the court to have jurisdiction." Fry v. United States, 72 Fed. Cl. 500, 503. The Ancman's complaint fails to do so in this case and cannot be amended through their response brief. See Lawmaster v. Ward, 125 F.3d 1341, 1345 n. 2 (10th Cir. 1997) (refusing to consider claim not raised in complaint); Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) "[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."); Crest A Apartments, Ltd. II v. United States, 52 Fed. Cl. 607, 613 (2002) (refusing to consider claim asserted in summary judgment motion but not in complaint).

**B. Even Assuming The Ancmans Properly Amended Their Complaint, The Statutes And Regulations They Now Cite For Support Are Not Money - Mandating**

While the United States recognizes that in this Court "the pleadings of a pro se plaintiff are held to a less stringent standard than those of the litigants represented by counsel," (Fry v. United States, 72 Fed. Cl. at 503-504, citing Hughes v. Rowe, 449 U.S. 5, 9, (1980)), the Ancmans are no longer pro se and their counsel should have sought leave to amend the complaint in accordance with the Courts rules. However, given that the Ancmans were pro se when they filed their complaint, and that it has been "the tradition of the court to examine the record 'to see if [a pro se] plaintiff has a cause of action somewhere displayed,'" the argument below addresses the statutory and regulatory scheme set forth in the Ancmans' response brief in their attempt to identify a money-mandating source for Tucker Act jurisdiction. Fry v. United States, 72 Fed. Cl. 500, 503-504 (2006), quoting Ruderer v. United States, 412 F.2d 1285, 188 Ct. Cl. 456, 468 (1969).

10 U.S.C. § 8911 is not a money mandating statute. It simply provides for retirement to occur based upon length of military service: "The Secretary of the Air Force may, upon the officer's request, retire a regular or reserve commissioned officer of the Air Force who has at least 20 years of service computed under section 8926 of this title, at least 10 years of which have been active service as a commissioned officer . . . The Secretary of Defense may authorize the Secretary of the Air Force, during the period specified in paragraph (2), to reduce the requirement under subsection (a) for at least 10 years of active service as a commissioned officer to a period (determined by the Secretary of the Air Force) of not less than eight years." 10 U.S.C. § 8911. Thus, although that statute applies to the determination of retirement eligibility, it does not provide a fiscal resource to Mr. and Mrs. Ancman.

Nor is 10 U.S.C. § 8926 construed as mandating money for alleged damages. That statute merely concerns the computation of years of service for voluntary retirement of regular and reserve commissioned officers. 10 U.S.C. § 8926. It does not provide a means for payment of damages to the Ancmans.

The Temporary Early Retirement Authority ("TERA"), Public Law 102-484, also fails to assist Mr. and Mrs. Ancman, as this Court has held that TERA statutes are not money-mandating, even when combined with statutes that require retirement for eligible service members. Loeh v. United States, 53 Fed. Cl. 2, 7 (2002), citing Greek v. United States, 44 Fed. Cl. 43 (1999).

Mr. and Mrs. Ancman further assert that "mandatory regulations and directives through which the Air Force administered the early retirement program" provide money-mandating sources of law. Pl. 2nd Resp. at 13. However, to the extent the Ancmans' brief asserts the Air Force violated its own administrative procedures when it processed the Ancmans' early retirement action, that claim is actually asserting a violation of the Administrative Procedures Act, which was not plead in the Ancmans' complaint and which "neither confers jurisdiction on the Court of Federal Claims nor mandates the payment of money and, thus, does not provide a basis for suit." Loeh v. United States, 53 Fed. Cl. at 4, citing Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997); Nat'l Corn Growers Ass'n v. Baker, 840 F.2d 1547, 1559 (Fed. Cir. 1988). As in Loeh, these alleged violations asserted by the Ancmans in their response brief "are not actionable under the Tucker Act because none of the regulations cited by plaintiff fairly can be read to mandate the payment of money." Loeh v. United States, 53 Fed. Cl. at 5.

Mr. and Mrs. Ancman next argue that Volume 7B of the Department of Defense Financial Management Regulation ("DoDFMR"), which addresses the records correction

procedure and tracks the language of 10 U.S.C. §1552, is "incorporated into the mandatory procedures that attach to the retirement process" (Pl. 2nd Resp. at 15) and that Air Force Instruction ("AFI") 36-3203, Service Retirements, that controls the responsibilities related to the retirement application procedures and counseling process, are money-mandating within the accepted legal definition. The Ancmans are wrong. The responsibilities set forth in DoDFMR, which are discussed at pages 13-14 of the Ancmans' second response brief, are not at issue in this case, as the Ancmans never requested the official retirement estimate the Air Force informed them it could develop. It is therefore pure speculation as to whether personnel assigned to the Defense Finance and Accounting Service ("DFAS") neglected any of their obligations. In addition, the Ancmans' argument ignores the plain fact that Volume 7B of the DoDFMR concerns an actual "proper correction [to a record] and a right to the payment of money as a result of that proper correction." See PA at 6, DoDFMR ¶ 100103. In their case, there is no basis to "correct" the Ancmans' records, the Ancmans records **were not** corrected, and therefore no "payment based on a correction of military records" was, or is, required.

The Ancmans' response brief also asserts that mandatory directives "imposed an obligation on the Air Force to take the required steps to provide a legitimate retired pay estimate using the proper service dates." Pl. 2nd Resp. at 16. In support of this assertion, Mr. and Mrs. Ancman cite to AFI 36-3203 (2003), and Attachment 8 to that instruction, which states:

> using proper service dates and personnel data, a prospective voluntary retiree should be able to estimate retired pay based on several options," and "figure the years of service for officers according to 10 U.S.C. 1405 . . .

Pl. 2nd Resp. at 16; PA 42. However, those provisions do not mandate action by the MPF, as it clearly points to the calculation abilities **of the military member who is retiring.** Furthermore,

there is no question that during the retirement counseling Mr. and Mrs. Ancman were provided the disclaimer that to receive an official estimate of their retirement pay they had to contact DFAS.

In addition, the responsibility of the Military Personnel Flight ("MPF"), as defined in that instruction, is to prepare and process the Air Force ("AF") Form 1160, Military Retirement Actions, for Air Force members in the grades of colonel and below according to the procedures in the instructions upon the form. In addition, the MPF personnel must "make sure that each member gets a Retirement Options or Enlistment Fact Sheet (attachment 3) between the start of retirement processing and receipt of retirement orders." DSA 8 (AFI 36-3203, Personnel: Service Retirements, ¶ 1.2 (10 August 1994).[5] Those are the only responsibilities set forth for the MPF.

The retiring member has requirements, as well. In completing his or her portion of the Military Retirement Actions form,[6] the retiring member acknowledges in Block 10 that he or she,

> have read AFI 36-3203, para 2.11, 3.2.5, and Chapter 7, and understand the effects of the requested action. I received and signed AFI 36-3203, Attachment 7. I request approval of the action checked in item 9 above.

---

[5] Defendant has attached the applicable Air Force Instruction governing service retirements that was in effect at the time the Ancmans applied for retirement. The Ancmans concede in their response brief that the AFI they cite for support was not in effect at the time they sought early retirement. Pl. 2nd Resp. 13, n. 1.

[6] While neither administrative record included copies of the Ancmans' Military Retirement Actions form, the Ancmans have made clear in the record and in their briefs that they applied for retirement, which is accomplished using this form. A copy of the Military Retirement Actions form, dated 1 May 1988, that was in effect when the Ancmans retired is included in Defendant's supplemental appendix at DSA 55-56.

DSA 55. Again, the burden is upon the applicant to review the instruction. The MPF's responsibility is to provide the Air Force Instruction and attachment 7. Chapter 7 of AFI 36-3203, Determining Retired Grade and Pay, clearly explains that "the information here is a guide, not a complete or authoritative reference on all these subjects." DSA 41. The referenced attachment includes the following acknowledgment:

> A.7.7. I have been counseled on the effect of my proposed retirement date will have on my retired pay and have been given a retired pay estimate.
>
> A7.7.1 I understand that DFAS-CL computes retired pay under the applicable formula established by law, according to my grade and years of service.
>
> A7.7.6 I certify that all aspects of retired pay have been explained to me to my satisfaction, and how they may apply in my case. Appropriate personnel have discussed my retired pay estimate with me, and I fully understand how they calculated it. I further understand that, once I have chosen a retirement date, I may not extend that date or withdraw my application for the sole purpose of increasing my retired pay.

DSA 51.

On its face, there is nothing in the Air Force Instruction can be read as a mandate for money, and, thus, it cannot be used to assert jurisdiction under the Tucker Act.

### C. 10 U.S.C. §1552 Is Not A Money-Mandating Source Of Law For This Court's Jurisdiction Pursuant To The Tucker Act

Mr. and Mrs. Ancman are also incorrect in their assertion that 10 U.S.C. §1552 is a money-mandating source and are incorrect in their analysis of the Martinez case. In Martinez, the United States Court of Appeals for the Federal Circuit recognized that

> Section 1552 is "money-mandating" in the sense that it requires that the government grant monetary relief to a service member if the correction board determines that the service member's record should be corrected in a way that entitles the service member to

> back pay . . . But ***section 1552 is not the source of the right to back pay; that right comes from a different statute***, such as the Military Pay Act, 37 U.S.C. § 204. Accordingly, even though section 1552 mandates the payment of money if the correction board concludes that the service member's discharge was unlawful, section 1552 is not the "money-mandating" statute that gives rise to the cause of action that provides the basis for a Tucker Act suit in the Court of Federal Claims.

Martinez v. United States, 333 F.3d 1295, 1314-1315 (Fed. Cir. 2003) (citations omitted, emphasis added). Although the parameters of section 1552 were not the crux of the Martinez case, other opinions have correctly interpreted the Martinez analysis of section 1552: namely that 10 U.S.C. § 1552 is not money-mandating unless a military correction board has: 1) concluded the service member's discharge was unlawful, or, 2) granted relief and the service member seeks to enforce or challenge the implementation or scope of the remedial order. Driscoll v. United States, 67 Fed. Cl. 22, 25 (2005); Sinclair v. United States, 66 Fed. Cl. 487, 490 (2005); Lewis v. United States, 458 F.3d 1372, 1376 n3 (Fed. Cir. 2006). Neither of those two exceptions are applicable in the current case, as there is no challenge to the lawfulness of a discharge, nor was relief granted.

## IV. The Ancmans' Retirement Pay Has Been Properly Calculated Pursuant To Applicable Statutes And Regulations

### A. There Is No Statute Or Regulation That Mandates Retirement Pay Be Based Upon Fictionalized Service

The Ancmans seek to have their retirement pay increased based upon fictionalized service. The Ancmans have not contended that the retirement pay they currently receive from DFAS, which is based upon their actual military service, is miscalculated or uses an improper formula for calculating their retirement pay. To the contrary, the Ancmans simply want the Court to order the Air Force to plug imaginary service dates into the formula to increase their

retirement pay. Despite Mr. and Mrs. Ancmans' failure to identify a money-mandating source, 10 U.S.C. §§ 8929 and 8991, govern the computation of retirement pay and in some cases, could be construed as money-mandating. Section 8929 specifies that "a member of the Air Force retired under this chapter is entitled to retired pay computed under chapter 871 of this title." 10 U.S.C. § 8929. Section 8991 provides the formula for calculating retirement pay. Although these statutes were not plead in the Ancmans' complaint, they arguably could provide a basis for Tucker Act jurisdiction, and are discussed in this reply brief in order "to avoid unnecessary multiplication of proceedings" associated with amending a complaint. Michels v. United States, 72 Fed. Cl. 426, 431-432 (2006). Thus, having raised their claim pursuant to 10 U.S.C. §1552 (which is not money-mandating), and through the aforementioned statutes, this Court arguably might posses jurisdiction pursuant to the Tucker Act to entertain claims for increased retirement pay if the Ancmans were asserting that their retirement pay has been improperly calculated based upon their actual service. That is not the case here however.

As we have previously indicated, the statute governing early retirement for Air Force officers provides that

> [d]uring the active force drawdown period, the Secretary of the Air Force may - - (A) apply the provisions of section 8911 of title 10, United States Code [section 8911 of this title], to a regular or reserve commissioned officer with at least 15 but less than 20 years of service by substituting 'at least 15 years' for 'at least 20 years' in subsection (a) of that section.

10 U.S.C. § 1293(b)(3).

Pursuant to this early retirement authority, and section 8911 of Title 10, the Secretary of the Air Force may, upon an officer's request, retire a regular officer of the Air Force who has at least 15 years of service computed under 10 U.S.C. § 8926. Section 8926 provides that for the

purpose of determining whether an officer of the Air Force may be retired under 10 U.S.C. § 8911, years of service are computed by adding "all active service performed as a member of the . . . Air Force." 10 U.S.C. § 8926(a)(1); See also 10 U.S.C. § 1405.

The Ancmans have never alleged, nor could they, that the retirement pay they are currently receiving is **not** based upon the actual service duty they each completed upon active duty. Thus, the Ancmans are seeking a substantive right to pay that contravenes the express terms of the governing statute. However, absent a "statute or regulation that mandates pay for services never actually performed," their claims fail in this Court. See Dehne v. United States, 970 F.2d 890, 893-94 (Fed. Cir. 1992)(dismissing claim of reservist because statute did not permit payment for constructive service).

In sum, even assuming all of the facts in the Ancmans' complaint are true, and that the Ancmans "suffered financial injury by relying on advice given by [Air Force] personnel . . . not all financial injuries caused by government personnel result in sound legal claims against the government." Kinnucan v. United States, 25 Cl. Ct. 355, 360-361 (1992); see generally, OPM v. Richmond, 496 U.S. 414 (1990). The Ancmans assert that they suffered an injustice due to the continuing failure by the Air Force "to provide them with the necessary information that would have helped them avoid the harm they incurred when they retired without a credible estimate of their retired pay." In fact, the Air Force Instruction governing service retirements, as well as the unofficial estimate the MPF provided the Ancmans, placed the onus upon Mr. and Mrs. Ancman to calculate and obtain an official retirement pay calculation from DFAS via a written request. Their complaint therefore fails to state a claim upon which relief can be granted and should be dismissed.

## V. The Issue Of The Voluntariness Of Mr. And Mrs. Ancman's Retirements Is Not Properly Before This Court

When a service member pursues relief through a military corrections board, this Court's review is limited to the administrative record. Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006), citing Cunkelman v. United States, 229 Ct. Cl. 857 (1982). Furthermore, an individual waives an argument if it is not asserted before the board. Id. The Ancmans now allege that the court possesses jurisdiction to entertain their complaint because their retirements cannot be presumed to be voluntary. Mr. and Mrs. Ancman are wrong, because they did not raise the issue of voluntariness of their retirements to the BCMR, and did not allege their retirements were involuntary in their complaint filed with this Court, they are precluded from introducing that new argument to this Court. In sum, they have waived their ability to challenge the Secretary's decision based upon the voluntariness of their retirement. Id., citing Murakami v. United States, 398 F.3d 1342, 1354 (Fed. Cir. 2005) (affirming Court of Federal Claims' determination that Murakami, who had failed to raise an argument before the board, was precluded from raising that issue for the first time before this Court); see also, United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37, 73 S. Ct. 67, 97 L. Ed. 54 (1952) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."); Southwestern Bell Tel. Co. v. Pub. Util. Comm'n, 208 F.3d 475, 487 (5th Cir. 2000)

("The failure to raise an issue at the administrative level waives the right to appellate review of that issue.").[7]

Furthermore, the Court must find that, addressing the Ancmans' assertion of jurisdiction over this matter as a military pay case, where a plaintiff has voluntarily retired from the service by sua sponte accelerating his mandatory retirement date, the Court of Federal Claims lacks subject matter jurisdiction to grant relief as prayed for in subject complaint. Sammt v. United States, 780 F.2d 31, 33 (Fed. Cir. 1985).

## VI. The Ancmans Cannot Establish A Right To Increased Retirement Pay By Asserting Their Actions Were Involuntary

Should the Court consider the merits of the Ancmans' assertion that their retirements were not voluntary, it must reject their argument here because it is not supported by the law as applied to the facts in this case. The Ancmans correctly explain that a separation may be rendered involuntary if it is the result of misrepresentation by government officials. Pl. 2nd Resp. at 25, citing Tippet v. United States, 185 F.3d 1250, 1255 (Fed. Cir. 1999). However, Mr. and Mrs. Ancman are incorrect in their representation that the Air Force counseling they received contained "material misstatements on which they reasonably relied when making their early retirement decision." Pl. 2nd Resp. at 27. Further, the facts of their case are not analogous to

---

[7] To the extent Ancmans included those arguments to respond to the reference the United States made in its opening motion that the Military Pay Act (37 U.S.C. §204) was inapplicable because the Ancmans were not challenging their discharge from the Air Force and seeking reinstatement with back pay, and thus the Court lacked jurisdiction, the Ancmans cannot refute that argument, or cure that defect in their pleading, by including allegations of involuntariness in their response. "[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d at 1107. Because the Ancmans waived the argument that their retirements were involuntary based upon alleged material misstatements during retirement counseling, their claims do not fit within 37 U.S.C. § 204, which requires that a plaintiff's separation be involuntary. Metz v. United States, 466 F.3d at 999-1000.

Scharf v. Department of the Air Force, as they suggest, but rather track the scenario in Longhofer v. United States.

"What is required for a retirement to be considered involuntary is reasonable, detrimental reliance on the part of the plaintiff on a material misstatement made by a government official. Furthermore, 'plaintiffs cannot be granted relief simply because [they] fail[] to more fully educate [themselves] as to the law, and later wish[] to revisit [their] voluntary choices. It is well established that ignorance of the law is no excuse.'" Longhofer v. United States, 29 Fed. Cl. 595, 602-603 (1993), citing, Heaphy v. United States, 23 Cl. Ct. 697, 703 (1991). In Scharf, 710 F.2d 1572, the Court determined that reliance on an official government retirement counselor's objectively misleading statements (which were, in fact, false) made an optional retirement involuntary. In the current case, however, there is no evidence to support a similar conclusion. The Ancmans were not given false information; they were given what was clearly acknowledged to be an **estimate** of retirement pay. The Ancmans assert an unidentified MPF personnel informed them that the MPF estimate of retirement was usually correct within a few dollars of the official DFAS estimate, but to obtain the official estimate, the responsibility rested with the member to contact DFAS at the address the MPF provided. Thus, much like the facts in the Longhofer case, where the Court rejected a colonel's contention that because he was not provided advice on his retirement options or informed of the legal consequences of immediate retirement his retirement was involuntary, all of the information the Ancmans were given was accurate, and they simply failed to obtain the information needed for the official estimate. Longhofer v. United States, 29 Fed. Cl. at 597, 602-603 (1993).

Furthermore, although Mr. and Mrs Ancman now contend, for the first time, that "[they] were compelled to act under extreme time pressure and were deprived of the opportunity to

make an informed choice or to revise or retract their decision at a later time," Plt. 2nd Resp. at 21, there is no evidence in the record that the Ancmans ever attempted to revise or retract their retirement decision, apart from the allegation that they were informed they could not revoke their retirement decision seven days after it was made, and no evidence of how they were deprived of an opportunity to make an informed choice (as there is no evidence they wrote to DFAS for an official estimate). Thus, there is simply no evidence in the record that Mr. and Mrs. Ancman were actually deprived of any opportunity, and did not retire under any duress or coercion. Longhofer v. United States, 29 Fed. Cl. at 601; see generally, Murphy v. United States, 69 Fed. Cl. 593, 604-610 (2006).

The Ancmans would have the Court speculate upon what information DFAS could have, or would have, provided the Ancmans, to support their assertion that they were somehow failed by the Air Force. Plt. 2nd Resp. at 28. Such speculation does not alter the voluntariness of their retirement. Furthermore, what information they would have received from DFAS had they submitted a written request, as they were counseled to do, to obtain the official retirement estimate, is unknown. The actions the Ancmans could have taken with the resulting information are similarly unknown. To assert that "it is clear that even if the Plaintiffs had gotten through to DFAS-CL, they would have gotten no better information than they got originally," or that "the system . . . failed in a manner that was beyond Plaintiff's control, and in a manner that was totally within the control and responsibility of the Air Force," is not based upon any facts in the record. What the record does clearly demonstrate is that after getting in line at 4:30 a.m. to request an early retirement, and then after being advised of the consequences of their decision in accordance with the AFI requirements, given an unofficial estimate of their retired pay, and informed that to receive an official estimate of retirement pay they could write to DFAS at the

address provided, Mr. and Mrs. Ancman each submitted a military retirement action and did not obtain the official retirement pay calculation from DFAS. AR1 39, 26-27; AR2 36, 23-24. There is simply no other evidence in the record, and thus, there is no basis to find that the Ancmans retirements were other than voluntary.

**VII. This Court Should Affirm The Secretary's Decision As It Was In Accordance With The Law, Supported By Substantial Evidence, And Neither Arbitrary Nor Capricious**

Contrary to Mr. and Mrs. Ancmans' assertion that the AFBCMR "awarded Plaintiffs a monetary remedy for the injustice they suffered in connection with the decision to take early retirement," Pl. 2nd Resp. at 36, the Assistant Secretary, acting upon behalf of the Secretary of the Air Force, has made the "one and only actual decision" in the current case. Strickland v. United States, 423 F.3d 1335, 1339 (Fed. Cir. 2005). Only that decision is subject to review by this Court, which must determine if the decision was arbitrary, capricious, unsupported by substantial evidence, or in violation of law. Id. Where the Secretary disagrees with the board and rejects its recommendation, then the Secretary must provide a written statement supporting the rejection. When this occurs, the Court reviews the Secretary's decision upon the basis of the Secretary's written statement. Id. To prevail, the Ancmans "must prove by clear and convincing evidence that the Secretary acted 'in bad faith, without a rational basis, or contrary to law, by which plaintiff has been seriously prejudiced and money is due.'" Brown v. United States, 30 Fed. Cl. 227, 231 (1993), quoting Arens v. United States, 24 Cl. Ct. 407, 415 (1991), vacated on other grounds, 969 F.2d 1034 (Fed. Cir. 1992) (citing Wronke v. Marsh,787 F.2d 1569, 1576 (Fed. Cir. 1986)). Even if this court disagrees with the Secretary's decision, "it cannot substitute its own judgment if reasonable minds could reach differing conclusions." Brown v. United States, 30 Fed. Cl. at 231 (citations omitted).

The decision of the Assistant Secretary in the current case must be upheld, as her finding of neither error nor injustice in this case is supported in her written statement. Despite the Ancmans' arguments, they have not demonstrated by "cogent and clearly convincing evidence" that the Secretary violated the applicable standards of law or acted arbitrarily, capriciously, in bad faith or without a rational basis. Chisolm v. United States, 65 Fed. Cl. 497, 499 (2005). Instead, their arguments are merely the disagreements they have with the conclusion of the Assistant Secretary. However, it is well settled that mere disagreements with the decision are not enough to overturn that decision, even if the Court itself might reach a different decision.[8] See Sanders v. United States, 219 Ct. Cl. 285, 303-305, 594 F.2d 804, 814-815 (1979).

The Assistant Secretary properly found no error or injustice when she reviewed the Ancmans' records and rejected the AFBCMR's recommendation. In the decision to deny relief, the Assistant Secretary considered the reliance the Ancmans allegedly placed upon the estimate they received from the Pentagon MPF personnel, and her decision explains why that reliance did not suffice for her to provide the Ancmans additional retirement benefits for periods of service in which they did not serve, as there was no evidentiary support for the Ancmans' assertion, nor any

---

[8] Narrow review of the Assistant Secretary's decision is appropriate here too because "[s]trong policies compel the court to allow the widest possible latitude to the armed forces in their administration of personnel matters." Sanders, 219 Ct. Cl. at 302, 594 F.2d at 813 (citing Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953); see also Chappell v. Wallace, 462 U.S. 296 (1983); Gilligan v. Morgan, 413 U.S. 1 (1973). Moreover, "[t]his Court does not sit as a super correction board." Harris v. United States, 14 Cl. Ct. 84, 89 (1987), aff'd, 861 F.2d 729 (Fed. Cir. 1988). In reviewing the AFBCMR's decision, the Court is not to reweigh the evidence and decide whether the conclusions were correct, but merely review whether the conclusions are supported by substantial evidence in the record. Heisig v. United States, 719 F.2d 1153, 1157 (Fed. Cir. 1983). Substantial evidence is merely "more than a scintilla" and "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Massa v. Department of Defense, 815 F.2d 69, 72 (Fed. Cir. 1987) (quoting Consolidated Edison Co. v. Labor Board, 305 U.S. 197, 229 (1938)).

indication that DFAS had provided inaccurate estimates of retired pay. AR1 9-10; AR2 8-9. Furthermore, the estimate of retirement pay received from the Pentagon MPF was clearly identified as such, and the address to obtain an official DFAS estimate was also clearly provided. The Assistant Secretary's finding that the Plaintiffs' failure to seek official confirmation of their retirement pay from DFAS was inexcusable is not arbitrary or capricious in light of Ancmans' representations that the exact amount of the retired pay was crucial to their decision to retire.

Mr. and Mrs. Ancman attempt to read into the Secretary's ruling an implication that in cases where the evidence of miscounseling was sufficient, a record would be corrected and relief provided. Such speculation is improper, and it is also not evidence before this Court. Again, what the Assistant Secretary's decision shows is her finding that the estimates the Ancmans received from the MPF were "clearly identified as such and provided the address of the proper source to obtain official estimates. In addition, the applicants had almost nine months to confirm the accuracy of the Pentagon MPF estimates before retirements . . ." AR1 9-10; AR2 8-9. Noting the absence of corroborative evidence from the Pentagon MPF or an indication that the Ancmans were provided inaccurate estimates of their retired pay from DFAS, the Assistant Secretary found "no compelling basis to provide them additional retirement benefits for periods of service in which they did not serve . . . the failure to seek official confirmation of the Pentagon estimates from DFAS before retirement…is inexcusable and militates against the granting of relief." AR1 10; AR2 9.

Furthermore, the Ancmans' assertion that the Assistant Secretary failed to consider relevant factors and disregarded substantial evidence is not supported by the record. Her decision correctly notes no corroborating evidence from the Pentagon MPF personnel concerning the estimate provided. AR1 10, AR2 9. The Secretary did not "ignore[] evidence in

the record that did corroborate Plaintiffs' statement" as alleged in the response brief at page 32. Rather, Air Force personnel that the Ancmans referred to in support of their belief that the estimates were accurate within a few dollars were not involved in the retirement application process at the Pentagon MPF. They were personnel from Nellis Air Force Base and from the Headquarters Air Force Personnel Center, who the Ancmans contacted after they retired and had started to receive their retirement pay. AR1 12, 23, 35; AR2 11, 32.

The Assistant Secretary's finding that the Ancmans failed to confirm the estimate is also supported by the record. Despite Mr. and Mrs. Ancmans' assertions that they tried repeatedly to telephone DFAS to no avail, the Pentagon MPF estimate provided clearly directed the Ancmans to a mailing address for an official calculation, and did not include a telephone number. See AR1 48; AR2 44. The Ancmans produced no evidence of written requests to DFAS for official retirement estimates. The Ancmans' assertion that DFAS could not have assisted them had they been contacted is also not supported by the record, and is purely speculative. Furthermore, it is speculative to assert what would have happened if the Ancmans had received the official calculation from DFAS, what that calculation would have been, whether the Ancmans would have attempted to revoke their retirement or extend their military service, or whether the Air Force would have permitted them to do so. It is also speculative to consider if an official DFAS estimate had also been erroneous what the Assistant Secretary would have decided. Regardless of the Ancmans' "what ifs," this Court is bound to look at what the Secretary decided based upon what actual evidence was before her. The record supports her finding that there was no evidence of any action to obtain an official estimate by Mr. and Mrs. Ancman except for their self-supporting statements of attempts via telephone to contact DFAS.

Even the BCMR in its recommendation to the Secretary noted the Ancmans had the responsibility to obtain an accurate estimate from DFAS and opined that the Ancmans were partially responsible for the situation they found themselves in. AR1 7, 9; AR2 7, 8. The fact that the Assistant Secretary found them completely responsible was not arbitrary or capricious, but rather demonstrates that reasonable minds could differ in reviewing the facts of this case. At bottom, the decision was supported by substantial evidence and should be upheld.

## VIII. Although A Military Corrections Board Has Equitable Powers, This Court Does Not, And Cannot Substitute Its Judgment For That Of The Secretary

"As a jurisdictional matter, this Court lacks general authority to grant relief, monetary or otherwise, on purely equitable grounds." Anderson v. United States, 59 Fed. Cl. 451, 456 (2004) (citations omitted). An award of equitable relief occurs "only when such an award would be ancillary to an affirmative obligation of the federal government to pay money damages." Id. Although a board for correction of military records can make decisions based on equitable grounds to remove an error or an injustice, (see 10 U.S.C. § 1552), this Court can address "government obligations that rest in equity rather than law . . . **only when** referred to the court by Congress pursuant to 28 U.S.C. §§ 1492 and 2509." Kinnucan v. United States, 25 Cl. Ct. at 361. Thus, in the current case, the Court should reject the Ancmans' plea of equitable entitlement. The Ancmans' response brief appears to present an argument that seeks to put the issue in equity before this court. However, equitable estoppel does not apply against the Government in situations where application of estoppel would result in the payment of money that was not authorized by federal statute. Perez v. United States, 156 F.3d 1366 (1998); see also OPM v. Richmond, 496 U.S. 414 (1990).

The Ancmans claim that the AFBCMR has corrected records in the past when equity required, and attached in their appendix records of proceedings for other matters presented to the board to illustrate "the routine nature of the action the Board took in the instant case."[9] Pl. 2nd Resp. at 17. The Court should decline the Ancmans' invitation to take judicial notice of other records of proceedings where the board corrected records in various pay matters, as they are not binding upon the Court. In addition, not only are such issues not relevant to the current proceeding, but also the United States never argued that the Board or the Secretary could not correct records. In addition, the facts in those cases are clearly distinguishable from the facts of record here.

In the current case, the Ancmans do not seek to have records corrected, because their military record is not, nor can they assert that their records are, incorrect. Instead, what the

---

[9] There are specific and distinguishing factual differences in these cases which lead to different results. For example, in the first record of proceeding the Ancmans submitted (Plaintiffs Supplemental Appendix ("PSA") 44), the Secretary corrected the member's record, which resulted in a correction to his retirement date. The Secretary did so because the member's original retirement occurred because he was twice nonselected for promotion. In correcting his record, the member was promoted, and subsequently would not have had to mandatorily retire. Thus, the record was corrected to extend the retirement date. In the second case (PSA53), the board corrected the member's record to permit him to voluntarily retire under the Early Retirement Program when the member had delayed applying because he was waiting for the results of an official investigation, and then the program criteria changed, making him ineligible to apply. This correction did not result in any fabrication of military service. In the third case (PSA 56), the board corrected the records of a member of the Air Force Reserve who unexpectedly died having exceeded the necessary "points" requirement for a "good year" toward retirement, but who had only 19 years, 9 months, and 25 days toward a complete 20th year of military service, and thus had not completed the "year" for benefits purposes. In changing his military record, board devised a solution for his family to receive remuneration for his service, as the member had technically completed 20 years of service. This correction did not result in receipt of pay for military service not actually performed. In the final case (PSA 60), the board recommended correcting a record to permit an individual to retire with 20 years of satisfactory service, but the Assistant Secretary disagreed, noted the lack of corroborating evidence to his claimed length of service and the absence of evidence of miscounselling, and denied relief.

Ancmans want is for the United States to change their military service dates to include a period of service they admit they never completed so that a new retirement pay calculation would result. This would not **correct** a record, it would **fabricate** it. Unlike the board cases where errors in records or an injustice in the promotion process which resulted in failures to promote and then forced separations or retirements that were later corrected by the board, the Ancmans did not, and are not, suffering an injustice. They are receiving exactly the amount of money they are entitled to per the statutory calculation governing their retirement. Unlike the other board proceedings examples included in the Ancmans' appendix, where individuals were not going to receive any retirement at all or were found to be eligible for greater retirement based upon errors in their records, the Ancmans simply received an MPF estimate of retirement pay, and never bothered to get the official calculation from DFAS. Nothing in their military record is erroneous, and thus, nothing needs to be corrected. Accordingly, the Court should reject the Ancmans' attempt to fabricate service and invent military records so they can receive more retirement pay, uphold the decision of the Assistant Secretary of the Air Force, and dismiss Mr. and Mrs. Ancmans' complaint.

## CONCLUSION

For the reasons cited above, and as further explained in our opening brief, the defendant respectfully requests the Court dismiss Mr. and Mrs. Ancmans' claims, or in the alternative, grant judgment upon the administrative record in favor of the United States.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Bryant G. Snee
BRYANT G. SNEE
Deputy Director

s/Douglas K. Mickle
DOUGLAS K. MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., N.W.
Washington, D.C. 20530
Tele: (202) 307-0383
Fax: (202) 353-7988
Attorneys for Defendant

OF COUNSEL:

MAJOR CAREY A. MERRILL
Air Force Legal Operations Agency
1501 Wilson Boulevard
Arlington, VA 22209

March 12, 2007

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on March 12, 2007, a copy of the foregoing "**DEFENDANT'S SECOND REPLY TO PLAINTIFFS' SECOND RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND IN THE ALTERNATIVE, MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD, WITH DEFENDANT'S SUPPLEMENTAL APPENDIX**" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Douglas K. Mickle
Douglas K. Mickle